**FILED**

MAR – 7 2003

LARRY W. PROPES, CLERK
CHARLESTON, SC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Connelly Management, Inc., | Civil Action: 2:02-2440-18 |
| Connelly Management Employee | |
| Welfare Benefit Plan, | |
| James B. Connelly, individually | |
| James B. Connelly, as a participant under | |
| the Connelly Management Employee | |
| Welfare Benefit Plan and all participants | |
| similarly situated, | |
|         Plaintiffs, | |
| | |
| vs. | |
| | |
| Ferguson Marketing Group, Inc. | |
| Ferguson Waldron Communications, Inc. | |
| John Lewis Ferguson, Jr. | |
| Shirley C. "Shan" Ferguson | |
| Robert Waldron | |
| Sharon Waldron | |
| W. Markus Frye | |
| American Heartland Health Administrators | |
| Incorporated | |
| Jack H. M. Ferguson | |
| Edwin W. Ehler | |
| Patricia E. Lupher | |
| Mid-South Benefits Group | |
| James A. Glidewell | |
| Brian S. Glidewell | |
| Southern Plan Administrators, Inc. | |
| Euan David McNicoll | |
| John Fowler Anderson | |
| Marsh Investment Corporation | |
| McSooner, Inc. | |
| John E.J. King | |
| Arlene G. Cleare | |
| Worldwide Trustees Services Limited | |
| Marketrends Financial Services, Ltd. | |
| Marketrends Insurance, Ltd. | |
|         Defendants. | |

G:\CASES\02-290\AHHA.C2

Page 1 of 46

# FIRST AMENDED COMPLAINT

Plaintiffs above-named, complaining of the Defendants herein, would respectfully show unto this Honorable Court as follows:

## GENERAL ALLEGATIONS

1.      Plaintiff, Connelly Management, Inc., is a corporation organized and existing under the laws of the State of South Carolina, with its principal place of business being in Charleston County, South Carolina.  It is engaged in the business of managing nursing homes in South Carolina.

2.      Plaintiff, Connelly Management Employee Welfare Benefit Plan was adopted by Plaintiff Connelly Management, Inc. as an ERISA plan intended to be a lawfully created, properly underwritten and insured ERISA plan established for the purpose of providing medical benefits to the employees of Connelly Management, Inc. in South Carolina.

3.      Plaintiff, James B. Connelly, is a citizen and resident of the Charleston County, South Carolina.  Plaintiff Connelly brings this action in his individual capacity, and on behalf of all employees of Plaintiff Connelly Management, Inc. who elected to be covered under the Connelly Management Employee Welfare Benefit Plan between the dates of January 1, 2001 and December 31, 2001 and who have adjudicated unpaid health insurance claims which were covered under the terms of said plan during said time period.

4.      Connelly Management, Inc. utilized the expert consulting and  "insurance benefit design" services of Defendant Ferguson Marketing Group, Inc. and Defendant Ferguson Waldron Communications, Inc. in connection with the research, analysis, evaluation, selection, planning, creation, establishment, placement, implementation and servicing of the Connelly Management Employee Welfare Benefit Plan.

G:\CASES\02-290\AHHA.C2

5.      Defendant, Ferguson Marketing Group, Inc. is a corporation organized and existing under the laws of South Carolina, with its principal place of business being in Charleston County, South Carolina.

6.      Defendant, Ferguson Waldron Communications, Inc., at all times relevant hereto, was a corporation organized and existing under the laws of South Carolina, with its principal place of business being in Charleston County, South Carolina. Said corporation was dissolved on May 7, 2002 by the officers, directors and shareholders (hereinafter individually named as Defendants) with full knowledge of Plaintiffs' claims against said corporate Defendant.

7.      Defendant, Ferguson Marketing, among other things, was an insurance agency, which at all times relevant hereto, held itself out as an expert in "insurance benefit design" claiming it had "over 25 years of experience in consulting, planning, designing, implementing, and servicing all types of employee benefit plans." In addition to group health, life and disability Ferguson Marketing claimed it offered "a wide variety of benefit plans to suit every need."

8.      Defendant Ferguson Marketing's motto was that it was "navigating benefits through technology." This motto was intended to represent to the public that Ferguson Marketing had technology which allowed it to access research and analysis of insurance markets and trends for the benefit of its clients.

9.      At all times relevant hereto, Defendant Ferguson Marketing held itself out to the public as a professional organization with expert knowledge of group health insurance matters.

10.     Defendant John Lewis Ferguson, Jr. is a citizen and resident of Charleston County, South Carolina; he is the President of Defendant Ferguson Marketing Group, Inc.; was the President of Defendant Ferguson Waldron Communications, Inc.; and, he was a stockholder and member of

the board of directors of both corporations.

11.    Defendant John Lewis Ferguson, Jr. is licensed by the State of South Carolina as an insurance agent and said Defendant is an insurance professional.

12.    Defendant Shirley C. "Shan" Ferguson is a citizen and resident of the Charleston County, South Carolina and was the treasurer, a stockholder of, and a member of the board of directors of Defendant Ferguson Waldron Communications, Inc.

13.    Defendant Robert Waldron is a citizen and resident of Charleston County, South Carolina and was the secretary, a stockholder of, and a member of the board of directors of Defendant Ferguson Waldron Communications, Inc.

14.    Defendant Sharon Waldron is a citizen and resident of Charleston County, South Carolina and was the vice president, a stockholder of, and a member of the board of directors of Defendant Ferguson Waldron Communications, Inc.

15.    Defendant W. Markus Frye is a citizen and resident of the Charleston County, South Carolina. At all times relevant hereto, Defendant Frye was the "director of operations" of Defendant Ferguson Marketing.

16.    Defendants Ferguson Marketing Group, Inc., Ferguson Waldron Communications, John Lewis Ferguson, Jr. Shirley C. "Shan" Ferguson, Robert Waldron, Sharon Waldron and William Markus Frye are jointly referred to herein as "Ferguson Marketing".

17.    Defendant American Heartland Health Administrators Incorporated, [hereinafter "AHHA"], is a corporation organized and existing under the laws of the State of Oklahoma, with its principal place of business being in the State of Texas doing business in the United States. Defendant Jack H.M. Ferguson and Defendant Edwin Ehler own, operate and manage AHHA. One

G:\CASES\02-290\AHHA.C2

Milton D. Wilkinson was formerly a principal of AHHA.

18.    At all times relevant hereto, Defendant AHHA held itself out as a "third-party claims administrator (TPA)" being in the general business of providing claims administration services to employee welfare benefit plans; the Ferguson Defendants represented that AHHA was a capable and competent fiduciary who would act by and on behalf of said plans and that AHHA would carry out its fiduciary duty of "single loyalty" to the plan sponsor in the performance of its duties.

19.    Defendant AHHA represented that it would "absorb its own legal costs for . . . duties performed for the Plan, and on which assistance is necessary" and said duties included AHHA's assumed duty of performing insurance underwriting for the plan sponsors and the purchase of an insurance product AHHA termed "reinsurance" for ERISA plans for which Defendant AHHA was acting in the fiduciary capacity of plan administrator.

20.    Defendant Jack H.M. Ferguson is a citizen and resident of the State of Texas.

21.    At all times relevant hereto, Defendant Jack H.M. Ferguson was the President and Chief Executive Officer of Defendant AHHA.

22.    At all times relevant hereto, Defendant Jack H.M. Ferguson was the President and Chief Operating Officer of Defendant Southern Plan Administrators, Inc.

23.    Defendant Jack H. M. Ferguson  is an individual who has engaged in the State of South Carolina as a principal in the unauthorized business of insurance in this State by making or proposing to make, as an insurer, an insurance contract; by taking or receiving applications for insurance; by receiving or collecting premiums, commissions, membership fees, assessments, dues, or other consideration for insurance or any part thereof; by the issuance or delivery of contracts of insurance to residents of this State or to persons authorized to do business in this State; and by

directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another, any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters after effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this State and Defendant Jack H.M. Ferguson irrevocably constituted the Chief Insurance Commissioner as his true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made and as such said Defendant is subject to the personal jurisdiction of this Court pursuant to S.C. Code Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United States, Chapter 20, 1st Session, S. 340, 59 Stat. 33; 15 U.S.C., Sections 1011 to 1015, inclusive, as amended, which declares that the business of insurance and every person engaged therein are subject to the laws of the several states.

24.    Defendant Southern Plan Administrators, Inc., [hereinafter referred to as "SPA"], is a corporation organized and existing under the laws of the State of Texas.

25.    Defendant SPA was and is the successor in interest to and alter ego of Defendant AHHA.

26.    Defendant Edwin W. Ehler is a citizen and resident of the State of Texas.

G:\CASES\02-290\AHHA.C2

27.     At all times relevant hereto Defendant Edwin W. Ehler  was the Chief Financial Officer of Defendant AHHA and the Treasurer and Chief Financial Officer of Defendant Southern Plan Administrators, Inc.

28.     Defendant Ehler is an individual who has engaged in the State of South Carolina as a principal in the unauthorized business of insurance in this State by making or proposing to make, as an insurer, an insurance contract; by taking or receiving applications for insurance; by receiving or collecting premiums, commissions, membership fees, assessments, dues, or other consideration for insurance or any part thereof; by the issuance or delivery of contracts of insurance to residents of this State or to persons authorized to do business in this State; and by directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another, any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters after effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this State and Defendant Ehler irrevocably constituted the Chief Insurance Commissioner as his true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made and as such said Defendant is subject to the personal jurisdiction of this Court pursuant to S.C. Code Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United States, Chapter 20, 1st Session, S. 340, 59 Stat. 33;  15 U.S.C., Sections 1011 to 1015, inclusive, as amended, which declares that the

G:\CASES\02-290\AHHA.C2

business of insurance and every person engaged therein are subject to the laws of the several states.

29.    Upon information and belief, Defendant Patricia E. Lupher is a citizen and resident of the State of Texas; she was the paramour/girlfriend of Defendant Jack H.M. Ferguson; she held the position of corporate secretary and claims manager for Defendant AHHA and she knowingly participated as a principal and aided and abetted the AHHA Defendants in the sale of the illegal insurance product as herein alleged.

30.    Defendants American Heartland Health Administrators Incorporated, its principals, Jack H.M. Ferguson, Edwin W. Ehler and Patricia E. Lupher, and AHHA's successor in interest and alter ego Southern Plan Administrators, Inc., are collectively referred to herein as "AHHA".

31.    Upon information and belief, Defendant, Mid-South Benefits Group, is a corporation organized and existing under the laws of the State of Tennessee.  It is engaged in the business, among other things, of acting as a life and health insurance broker and benefit design consultant.

32.    Upon information and belief, Defendant James A. Glidewell is a citizen and resident of the State of Tennessee, and said Defendant is a life and health insurance agent in the State of Tennessee.

33.    Upon information and belief, Defendant Brian S. Glidewell is a citizen and resident of the State of Tennessee, and said Defendant is a life and health insurance agent in the State of Tennessee.

34.    Defendants Mid-South Benefits Group, James A. Glidewell and Brian S. Glidewell are hereinafter collectively referred to as the "Mid-South Defendants."

35.    Upon information and belief, the Mid-South Defendants have engaged in the State of South Carolina as a principal in the unauthorized business of insurance in this State by making

or proposing to make, as an insurer, an insurance contract; by taking or receiving applications for

insurance; by receiving or collecting premiums, commissions, membership fees, assessments, dues,

or other consideration for insurance or any part thereof; by the issuance or delivery of contracts of

insurance to residents of this State or to persons authorized to do business in this State; and by

directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another,

any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or

renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of

applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or

investigation or adjustment of claims or losses or in the transaction of matters after effectuation of

the contract and arising out of it, or in any other manner representing or assisting a person or insurer

in the transaction of insurance with respect to subjects of insurance resident, located, or to be

performed in this State and the Mid-South Defendants irrevocably constituted the Chief Insurance

Commissioner as his true and lawful attorney in fact upon whom service of any and all processes,

pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made

and as such said Defendant is subject to the personal jurisdiction of this Court pursuant to S.C. Code

Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United

States, Chapter 20, 1st Session, S. 340, 59 Stat. 33; 15 U.S.C., Sections 1011 to 1015, inclusive, as

amended, which declares that the business of insurance and every person engaged therein are subject

to the laws of the several states.

36.    Defendant Euan David McNicoll is a citizen and resident of Scotland, United

Kingdom. Defendant McNicoll is an individual who has engaged in the State of South Carolina as

a principal and director in the unauthorized business of insurance on behalf of AHHA, North

American Indemnity, N.V., Marsh Investment Corp. and McSooner, Inc. in this State by making or proposing to make, as an insurer, an insurance contract; by taking or receiving applications for insurance; by receiving or collecting premiums, commissions, membership fees, assessments, dues, or other consideration for insurance or any part thereof; by the issuance or delivery of contracts of insurance to residents of this State or to persons authorized to do business in this State; and by directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another, any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters after effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located, or to be performed in this State and Defendant McNicoll irrevocably constituted the Chief Insurance Commissioner as his true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made and as such said Defendant is subject to the personal jurisdiction of this Court pursuant to S.C. Code Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United States, Chapter 20, 1st Session, S. 340, 59 Stat. 33; 15 U.S.C., Sections 1011 to 1015, inclusive, as amended, which declares that the business of insurance and every person engaged therein are subject to the laws of the several states.

37.    Defendant John Fowler Anderson is a citizen and resident of Scotland, United Kingdom. Defendant Anderson is an individual who has engaged in the State of South Carolina as

a principal and director on behalf of AHHA, North American Indemnity, N.V., Marsh Investment

Corp. and McSooner, Inc. in the unauthorized business of insurance in this State by making or

proposing to make, as an insurer, an insurance contract; by taking or receiving applications for

insurance; by receiving or collecting premiums, commissions, membership fees, assessments, dues,

or other consideration for insurance or any part thereof; by the issuance or delivery of contracts of

insurance to residents of this State or to persons authorized to do business in this State; and by

directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another,

any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or

renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of

applications, or delivery of policies or contracts, or inspection of risks, a fixing of rates or

investigation or adjustment of claims or losses or in the transaction of matters after effectuation of

the contract and arising out of it, or in any other manner representing or assisting a person or insurer

in the transaction of insurance with respect to subjects of insurance resident, located, or to be

performed in this State and Defendant Anderson  irrevocably constituted the Chief Insurance

Commissioner as his true and lawful attorney in fact upon whom service of any and all processes,

pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made

and as such said Defendant is subject to the personal jurisdiction of this Court pursuant to S.C. Code

Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United

States, Chapter 20, 1st Session, S. 340, 59 Stat. 33;  15 U.S.C., Sections 1011 to 1015, inclusive, as

amended, which declares that the business of insurance and every person engaged therein are subject

to the laws of the several states.

      38.    Defendant Marsh Investment Corporation (hereinafter Marsh Investment Corp.) is

G:\CASES\02-290\AHHA.C2

a Bahamian International Business Company.

39.    Defendant Marsh Investment Corp. is an alter ego of a Brussels, Belgium limited liability company called North American Indemnity, N.V. and an alter ego of Defendant Euan David McNicoll and Defendant John Fowler Anderson, its principal shareholders.

40.    The corporate stock of Marsh Investment Corp. was used to capitalize North American Indemnity, N.V.

41.    The corporate stock of Defendant Marsh Investment Corporation is an asset of North American Indemnity N.V., which corporate stock was intended to serve as the asset of North American Indemnity, N.V. which represented essentially the entirety of North American Indemnity, N.V.'s capital and supposed claims reserves, and its withdrawal as collateral or other transfer following notification of the numerous claims and pending litigation against North American Indemnity, Inc. would be a fraudulent conveyance in violation of the Statute of Elizabeth, as codified in S.C. Code Ann. §27-23-10 (1976, as amended).

42.    Defendant Marsh Investment Corp., acting through AHHA, North American Indemnity, N.V., and McSooner, Inc. engaged in the unauthorized business of insurance in this State by making or proposing to make, as an insurer, an insurance contract; by taking or receiving applications for insurance; by receiving or collecting premiums, commissions, membership fees, assessments, dues, or other consideration for insurance or any part thereof; by the issuance or delivery of contracts of insurance to residents of this State or to persons authorized to do business in this State; and by directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another, any person or insurer in the solicitation, negotiation, procurement, or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage

or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a

fixing of rates or investigation or adjustment of claims or losses or in the transaction of matters after

effectuation of the contract and arising out of it, or in any other manner representing or assisting a

person or insurer in the transaction of insurance with respect to subjects of insurance resident,

located, or to be performed in this State and Defendant Marsh Investment Corp. irrevocably

constituted the Chief Insurance Commissioner as its true and lawful attorney in fact upon whom

service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in

behalf of the insured may be made and as such said Defendant is subject to the personal jurisdiction

of this Court pursuant to S.C. Code Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law

79-15, 79th Congress of the United States, Chapter 20, 1st Session, S. 340, 59 Stat. 33; 15 U.S.C.,

Sections 1011 to 1015, inclusive, as amended, which declares that the business of insurance and

every person engaged therein are subject to the laws of the several states.

     43.     Upon information and belief, North American Indemnity, N.V. is a limited liability

company registered under the laws of Belgium which was incorporated on October 27, 2000 in

Brussels, Belgium.

     44.     Upon information and belief, Defendant McSooner, Inc., is a Bahamian corporate

entity incorporated under the International Business Companies Act of 2000. **[*Exhibit 1*]**.  It is

engaged in the unauthorized conduct of the insurance business in the Bahamas and in the State of

South Carolina by virtue of its association with Defendants AHHA and the other Offshore

Defendants.

     45.     Upon information and belief, Defendant, John E.J. King is a citizen and resident of

Nassau, Bahamas.  He is a company director of McSooner, Inc.  He knowingly, intentionally and

repeatedly participated as a principal and aided and abetted the sale of the illegal insurance product which is the subject of this action; he took actions to conceal the true identity of the beneficial owners of McSooner, Inc. and he possesses records and information which are discoverable. As such, he is named as a party to this action as an aider and abettor of McSooner, Inc. and the Offshore Defendants and for the purpose of obtaining discovery relating to McSooner, Inc. and Marsh Investment Corp.

46.    Upon information and belief, Defendant Arlene G. Cleare is a citizen and resident of Nassau, Bahamas. She holds the corporate office of secretary of McSooner, Inc. She knowingly, intentionally and repeatedly participated as a principal and aided and abetted the sale of the illegal insurance product which is the subject of this action; she took actions to conceal the true identity of the beneficial owners of McSooner, Inc. and she possesses records and information which are discoverable. As such, she is named as a party to this action as an aider and abettor of McSooner, Inc. and the Offshore Defendants, and for the purpose of obtaining discovery relating to McSooner, Inc. and Marsh Investment Corp.

47.    Upon information and belief, the principals and beneficial owners of Defendant McSooner, Inc. are Defendant Euan David McNicoll, Defendant John E.J. King, Defendant Arlene G. Cleare, and others whose names remained undisclosed for the purpose of concealing the illegal scheme hereinafter alleged. Upon information and belief, the name McSooner is derived as follows: the "Mc" portion of the name being attributed to McNicoll and derived from the Scottish name McNicoll, and, the "Sooner" portion of the name being derived from the name given the outlaws who snuck across the border of the Indian Territory in Oklahoma early, and unlawfully, to stake out their homesteads illegally, in the land rush of 1889. *[Exhibit 2]*.    AHHA attorney John Anthony

Claro has denied any disclosed or undisclosed ownership interest in McSooner, Inc. [*Exhibit 3*].

48.    Upon information and belief, McSooner, Inc., its principals, Defendant John E.J. King, Defendant Arlene G. Cleare, are subject to the personal jurisdiction of this Court because McSooner, Inc. acting as a co-conspirator with North American Indemnity, AHHA, Ferguson Marketing, the Offshore Defendants and the Mid-South Defendants earned commissions, monies, or fees associated with the issuance and delivery of an unauthorized policy of insurance or contract of insurance or indemnity in this State and collected a premium thereon; said Defendants acted as agents for insurers not licensed in this State, as required, and as such said Defendants irrevocably constituted the Chief Insurance Commissioner as their true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made and as such said Defendants are subject to the personal jurisdiction of this Court pursuant to S.C. Code Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United States, Chapter 20, 1st Session, S. 340, 59 Stat. 33; 15 U.S.C., Sections 1011 to 1015, inclusive, as amended, which declares that the business of insurance and every person engaged therein are subject to the laws of the several states.

49.    Defendants Euan David McNicoll, John Fowler Anderson, Marsh Investment Corp., McSooner, Inc., John E.J. King and Arlene G. Cleare are collectively referred to as the "Offshore Defendants".

50.    Upon information and belief, Worldwide Trustees Services Limited is a Bahamian corporation. It possesses information relating to the true identity of the beneficial owners of McSooner, Inc. which international business company illegally engaged in the insurance and reinsurance business in the Bahamas and the United States as alleged herein. It handled banking

transactions involving premium dollars wired from the United States which were collected from South Carolina insureds. At this juncture, said Defendant is named as a party to this action for the purpose of obtaining discovery relating to McSooner, Inc. and Marsh Investment Corp.

51. Defendant Marketrends Insurance, Ltd. is an insurance company organized and existing under the laws of the Republic of Cyprus.

52. Defendant Marketrends Financial Services, Ltd. is a corporation organized and existing under the laws of the Republic of Cyprus.

53. Marketrends Insurance, Ltd. and Marketrends Financial Services, Ltd. are collectively referred to as "Marketrends".

54. Defendant Marketrends, acting through Defendant AHHA and Ferguson Marketing, issued and caused to be delivered a policy of insurance or contract of insurance or indemnity in this State and collected a premium thereon; said Defendants were insurers not licensed in this State, as required, and as such said Defendants irrevocably constituted the Chief Insurance Commissioner as their true and lawful attorney in fact upon whom service of any and all processes, pleadings, actions, or suits arising out of the policy or contract in behalf of the insured may be made and as such said Defendants are subject to the personal jurisdiction of this Court pursuant to S.C. Code Ann. § 15-9-285 (1976, as amended) and by virtue of Public Law 79-15, 79th Congress of the United States, Chapter 20, 1st Session, S. 340, 59 Stat. 33; 15 U.S.C., Sections 1011 to 1015, inclusive, as amended, which declares that the business of insurance and every person engaged therein are subject to the laws of the several states.

55. This Court has original subject-matter jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. § 1132(e)(1) due to federal questions arising under the Employee Retirement Income Security

Act of 1974 (ERISA), 29 U.S.C.§1001 *et seq.* and pendent and/or diversity jurisdiction over the state

law claims raised against the Ferguson Marketing Defendants, the AHHA Defendants, the Offshore

Defendants and the Mid-South Defendants.

56.   Venue is proper in this District under 28 U.S.C. §1391(b) in that a substantial part

of the events or omissions giving rise to the claim occurred in this district, and under 29 U.S.C.

§1132(e)(2) in the breaches and wrongful acts alleged herein took place or one or more of the

Defendants reside or may be found in this district in that plaintiff's worked and/or were to have

received welfare benefit payments in this district. Moreover, venue of an action relating to the

unauthorized business of insurance committed by mail is at the point where the matter transmitted

by mail is delivered and takes effect which delivery and effect took place in this District.

57.   Upon information and belief, Defendants Ferguson Marketing, AHHA, the Offshore

Defendants and the Mid-South Defendants, aided by and acting in combination with each of the

Defendants named herein, participated in a scheme to create, market, sell and administer an illegal,

unauthorized and unregulated health insurance product which failed to perform as represented and

left hundreds of citizens of this State without health insurance benefits.

58.   The scheme was carried out by Defendants Ferguson Marketing, AHHA,

MarkeTrends, the Offshore Defendants and the Mid-South Defendants, aided by and acting in

combination with each of the said Defendants named herein, through the marketing, sale and

establishment of apparently legitimate self-insured ERISA employee welfare benefit health plans

that were represented to Plaintiffs, and other employer-plan sponsors, as capable of providing

affordable employee-participant health insurance coverage in exchange for an agreed premium under

a situation in which 100% of the employer's liability under the plan was "reinsured" from the "first

G:\CASES\02-290\AHHA.C2

dollar" by a legitimate insurance company experienced in the medical claims reinsurance business.

59.     The AHHA Defendants, utilizing the legal services of Claro, set up an apparently legitimate ERISA third party claims administrator under the name of Defendant American Heartland Health Administrators.  Upon information and belief, AHHA was formed when its predecessor Advanced Administrative Companies (hereinafter "AAC"), also represented by Claro, and operated by AHHA principal Milton D. Wilkinson, failed after its string of foreign purported reinsurers failed to pay claims, leaving numerous employees with unpaid medical bills.

60.     Upon information and belief, AHHA paid Claro, or his law firm, a legal fee based upon a percentage of monies or premiums or contributions collected or of AHHA's turnover from each of its employer plan sponsors and said payments in essence represented commissions from the sale of an illegal insurance product.  Upon information and belief, Claro acted as attorney for AHHA, for the plan sponsors, for the Offshore Defendants, for the Plaintiffs' herein, and also engaged in actions outside the scope of his attorney / client engagement.

61.     Upon information and belief, Defendant AHHA, utilizing the legal services of Claro which were provided to AHHA as the fiduciary plan administrator, and the employer plan sponsors, then created legal documents which purported to establish a self-insured ERISA employee welfare benefit plan which was "100%" reinsured from the "first dollar", in other words, an ERISA plan under the terms of which the employer had no risk beyond the payment of an established premium because of a purported "reinsurance agreement" underwritten by a purportedly legitimate insurance company.

62.     Upon information and belief, the same standard form "Administrative Contract" was used by AHHA for each of its approximately 408 employer plan sponsors.

63. Upon information and belief, the same standard form "Reinsurance Agreement" was used by the reinsurer for each of AHHA's approximately 408 employer plan sponsors.

64. Upon information and belief, the same standard form "Reinsurance Agreement" was used by each reinsurance companies that reinsured AHHA's book of business.

65. The standard form "Administrative Contract" was drafted by and/or approved by Claro.

66. The standard form "Reinsurance Agreement" was drafted by and/or approved by Claro.

67. These purported reinsurance agreements were not true reinsurance agreements at all, but what were, in fact, "health insurance" as health insurance is generally defined in the United States. Furthermore, and, in the alternative, the "Administrative Contract" with the purported "Reinsurance Agreement" constituted a multiple employer welfare arrangement (MEWA) which was fully insured within the meaning of ERISA section 3(40), and as such it was subject to state regulatory authority, including the standards requiring the maintenance of specified levels of reserves in order to be considered able to pay benefits in full when due pursuant to section 514(b)(6)(A)(I).

68. "Reinsurance" deals solely with one insurance company insuring the risks of another insurance company.

69. Defendants, by calling their product "reinsurance", sought to evade the insurance regulations of the several states which would have necessarily attached to the health insurance product and/or MEWA product being sold by Defendants.

70. Upon information and belief, John Anthony Claro rendered the legal opinion that the "Administrative Contract" and the "Reinsurance Agreement" were lawful and that the legal

arrangement so established was not subject to the regulatory authority of any state Department of Insurance and the AHHA Defendants and others relied on said legal advice.

71.    Defendant AHHA established a network of insurance agents and benefit design companies, also sometimes called "producers", who in exchange for a healthy commission (calculated as a percentage of premiums generated in amounts which far exceeded those normally earned be agents selling health insurance products) would arrange for their employer clients to hire AHHA as the third party administrator of their employee claims. Each said employer would be required to sign AHHA's standard "Administrative Contract."

72.    AHHA and its network of insurance agents and benefit design companies would in turn arrange for each employer to enter into the purported "Reinsurance Agreement" with a purportedly legitimate reinsurance carrier that reinsured AHHA's entire book of business. Each said employer would be required to sign the standard "Reinsurance Agreement."

73.    Upon information and belief, AHHA and the Offshore Defendants received undisclosed commissions or kickbacks for the placement of AHHA's entire book of reinsurance business with a purportedly legitimate reinsurance carrier.

74.    Defendants Ferguson Marketing operated an insurance benefit design company as hereinabove alleged. Said Defendants professionally advised Plaintiff Connelly Management, Inc. to establish an employee welfare benefit plan which was administered by Defendant AHHA and which was 100% reinsured by North American Indemnity, N.V. without performing any meaningful research or investigation into the history of AHHA, North American Indemnity, N.V. or the Offshore Defendants, or their principals.

75.    One Robert "David" Neal, of American Benefits Plan, operated a benefit design

company that also referred business to AHHA. Neal initially worked with Defendants Ferguson

Marketing, Inc. in regards to the establishment of the Connelly plan with AHHA and North

American Indemnity, N.V.. Upon information and belief, David Neal was indicted for health care

fraud and was sentenced to federal prison after having pled guilty to presenting a false claim to the

United States Treasury Department. *[Exhibit 17].*

76. Upon information and belief, the Mid-South Defendants received an "override"

commission on the sale of the illegal health insurance product by the Ferguson Marketing

Defendants to the Plaintiffs as herein alleged.

77. Upon information and belief, Defendant AHHA, and its predecessor AAC, have a

long history of doing business with a string of failed foreign reinsurers who left many employees

with unpaid medical claims. Historically, AHHA's string of purportedly legitimate reinsurance

carriers were not financially stable insurance companies or were otherwise incapable of, or unwilling

because of alleged underwriting errors or premium deficiencies, to perform their contractual

reinsurance obligations.

78. Upon information and belief, prior reinsurance companies utilized by AHHA, as part

of its overall ERISA scam, included First Fidelity, Baltic Insurance Group, Merrion (a purported

reinsurer from the Republic of Ireland), United Fidelity Corporation (a purported reinsurer from the

Cook Islands), North American Indemnity (a Belgium company) and MarkeTrends (a Cypriot

company), most of whom, not coincidentally, are now subject to cease and desist orders in several

states.

79. Upon information and belief, in each instance, when the medical claims of the

employee plan participants which were adjudicated as being payable by AHHA (or its predecessor

ACC) exceeded the employer plan sponsor reinsurance premiums paid to the reinsurance carrier, the reinsurance carrier would fail to pay valid claims, leaving employees with unpaid medical bills.

80.    Upon information and belief, each of these purportedly legitimate reinsurance carriers were selected by AHHA because of the fact they were foreign entities not regulated in the United States; they maintained no bank accounts in the United States; and, they were not easily subject to suit in the United States.  Furthermore, AHHA and he Offshore Defendants participated in the establishment of "asset protection" measures specifically designed and orchestrated to place the assets of the purportedly legitimate reinsurance carriers largely beyond the reach of ordinary legal process.

81.    Upon information and belief, no proper disclosure was made by any of the Defendants to the employers purchasing the health insurance product of: the lack of financial worth of the foreign purported reinsurers, the fact that the monies to pay the employees claims was being held in bank accounts outside of the United States, or of the serious problems inherent in doing business with an entity not regulated in the United States, all of which could have been determined by the Ferguson Defendants and the Mid-South Defendants  acting as insurance benefit design consultants.

82.    Upon information and belief, the reinsurance carriers failed to pay mounting legitimate adjudicated claims, AHHA would then blame the reinsurance carrier for the unpaid claims and AHHA would then urgently switch its entire book of business to another purportedly legitimate insurance company controlled by AHHA, such as AHHA did when it switched its book of business from United Fidelity Corporation to North American Indemnity, N.V. in September of 2000 and as it did when it urgently switched its book of business from North American Indemnity, N.V. to MarkeTrends in October of 2001.  Furthermore, AHHA failed to advise its  employer plan-sponsor

of the known financial problems of its reinsurers or their delinquent claims payment history in a timely fashion, until another switcharoo was in order. [*Exhibit 4*].

83.    Upon information and belief, Defendant Euan McNicoll worked as a broker in connection with the transaction in which AHHA placed its book of reinsurance business with United Fidelity Corporation.

84.    Upon information and belief, when United Fidelity Corporation was precluded from doing business and was going to shut down, McNicoll and Anderson, at the insistence of AHHA, and upon legal advice given by AHHA's attorney, Claro, formed North American Indemnity, N.V.

85.    North American Indemnity was incorporated on October 27, 2000.  However, according to AHHA records, North American Indemnity, N.V. began receiving reinsurance premiums from AHHA in September of 2000, before NAI even existed as a legal entity. [*Exhibit 5*].

86.    Upon information and belief, Defendant McNicoll and AHHA attorney, Claro, were partners in business and had an attorney-client relationship, that pre-dated the formation of North American Indemnity, N.V.  Claro had advised McNicoll on the use of an International Business Company for tax mitigation and the establishment of a trust for asset protection.  Claro had acted as the "protector" of McNicoll's trust.  Claro was also familiar with the fact McNicoll had lost his personal home which McNicoll put up as collateral in a failed reinsurance deal involving Claro's client, a failed third-party administrator known as AAC, which was run by Milton D. Wilkinson, a now bankrupt former director of client development for AHHA.  In July of 1999, Claro and McNicoll discussed forming "some type of 'two-man' Nassau based intermediary-brokerage firm", [*Exhibit 2*], upon information and belief, for the purposes of collecting undisclosed commissions

on reinsurance business derived from Claro's fiduciary clients.  In August of 1999, Claro and McNicoll discussed a business deal in which Could would set up a "Bahamian corporate entity" for McNicoll to use to collect reinsurance commissions, at no cost to McNicoll, and, that Claro could "come into the picture later." *[Exhibit 6]*.  Upon information and belief, these discussions were held while Claro was providing legal services to AHHA and its employer plan sponsors which related to important decisions in regard to the selection of various foreign reinsurers.

87.    Upon information and belief, in the case of North American Indemnity, N.V. in September of 2000, Jack H.M. Ferguson and AHHA's attorney, Claro, arranged for McNicoll and Anderson to form North American Indemnity, N.V. for the purpose of  reinsuring AHHA's entire book of business which then consisted of approximately 409 employer entities that adopted the AHHA plan in exchange for an agreed reinsurance premium sufficient to fund 100% of covered medical claims from the first dollar.

88.    North American Indemnity, N.V. was not a large financially stable company as the name would appear to impart, but was a newly formed shell company set up only to reinsure AHHA clients which was operated by Defendants McNicoll and Anderson primarily out of a house in Scotland. *[Exhibit 4]*.

89.    In early 2001, AHHA wire transferred the sum of $1,541,909.20 through Barclays Bank in the Bahamas to an account in the name of McSooner, Inc. *[Exhibit 7]*.

90.    Upon information and belief, the account of McSooner, Inc. was beneficially controlled by McNicoll and other undisclosed persons. Upon information and belief, McSooner, Inc. was set up to be a Bahamian corporate entity used to collect undisclosed insurance brokerage commissions for McNicoll and other undisclosed persons arising out of the NAI transaction in a way

it would not be discovered to be an insurance entity for Bahamian licensing purposes, for United Kingdom tax mitigation purposes, and so it would not be discovered by the Plaintiffs and others standing in the Plaintiffs shoes.

91. North American Indemnity, N.V. sued AHHA and Claro claiming they breached fiduciary duties owed by AHHA and Claro as Texas "insurance intermediaries" to North American Indemnity, N.V.

92. Upon information and belief, the funds wire transferred into the McSooner, Inc. account were premium dollars entrusted to AHHA by employer plan sponsors to be paid to North American Indemnity, N.V. as reinsurance premium payments.

93. Under the International Business Corporation Act of 2000 under section 4 a Bahamian international business company cannot "carry on business as an insurance or reinsurance company." **[*Exhibit 1*]**.

94. The Memorandum of Association of McSooner, Inc. specifically provided that the "Company may not (d) carry on business as an insurance or reinsurance company." **[*Exhibit 8*]**.

95. It was known to the AHHA Defendants that Bahamian authorities prohibited the payment of insurance premiums or commissions to McSooner, Inc. into a Bahamian bank account because McSooner, Inc. had not been pre-approved by the Department of Insurance. **[*Exhibit 3*]**.

96. When North American Indemnity failed to pay legitimate claims, Jack H.M. Ferguson set up a new third party administrator under the name of Defendant Southern Plan Administrators, Inc. Upon information and belief, Defendants James A. Glidewell and Brian S. Glidewell are stockholders of Defendant Southern Plan Administrators, Inc.

97. Defendants Ferguson, Ehler and the Glidewells then arranged to transfer AHHA's

book of TPA business to SPA and transferred the reinsurance agreements AHHA controlled from North American Indemnity, N.V. to another purportedly legitimate reinsurance company Defendant MarkeTrends.

98.    In October of 2001, Defendant Ferguson Marketing professionally advised Plaintiffs to continue doing business with AHHA / SPA and enter into a reinsurance agreement with Defendant MarkeTrends, notwithstanding the fact that none of Connelly's claims (some dating back to January 2001) had been paid.

99.    Upon information and belief reinsurance agreements were prepared by AHHA / SPA purportedly underwritten by MarkeTrends as the reinsurance carrier but only a small portion of those were actually signed by Defendant MarkeTrends or the various employers involved.

100.    North American Indemnity, N.V., Euan David McNicoll, John Fowler Anderson, American Heartland Health Administrators Incorporated, the Mid-South Defendants and MarkeTrends have been found to have engaged in unauthorized insurance business and are now the subject of cease and desist orders in several states, which cease and desist orders, upon information and belief, have become final adjudications as to their unlawful conduct of the insurance business in the United States, all as more fully appears from the following: *Official Order of the Commissioner of Insurance of the State of* **Texas**, *In RE: North American Indemnity, N.V., Euan David McNicoll and John Fowler Anderson, Case No. 02-1129* **[Exhibit 9]**; *Official Order of the Commissioner of Insurance of the State of Texas, In RE: Marketrends Insurance, Ltd., Case No. 02-1128* **[Exhibit 10]**; *Ex Parte Emergency Order to Cease and Desist the Unauthorized and Unlawful Transaction of the Business of Insurance in the State of* **Colorado**, *In RE: American Heartland Health Administrators, Southern Plan Administrators, Regit, Inc., North American Indemnity, N.V.,*

Managed Health Care, Inc., The Alliance Companies, Marketrends, Ltd. and Mid-South Benefits Group, Case File No. 132632 *[Exhibit 11]*; Cease and Desist Notice issued by the State of **Mississippi** Department of Insurance to North American Indemnity, N.V. and American Heartland Health Administrators, Inc. dated September 26, 2002 *[Exhibit 12]*; Order to Cease and Desist issued by the State of **Alabama** Department of Insurance *[Exhibit 13]*; Order to Cease and Desist issued by the State of **Indiana** Department of Insurance, In the Matter of North American Indemnity, N.V., John F. Anderson and, Euan D. McNicoll *[Exhibit 14]*; and Order to Cease and Desist issued by the Treasurer of the State of **Florida**, Department of Insurance, In the Matter of Alphonso Cariglino *[Exhibit 15]*.

101.    Despite this legal action taken thus far by six (6) states, AHHA attorney Claro has maintained that the states issued an "order without jurisdiction" and that the AHHA Defendants were assessing "a half-dozen legal remedies" to the state's order. *[Exhibit 16]*.

102.    Plaintiffs paid the Ferguson Marketing Defendants the sum of $1,049,039 in health insurance premiums, which Ferguson Marketing was to use to properly establish the Connelly Management Employee Welfare Benefit Plan sold and represented by Ferguson Marketing to Plaintiffs as a lawfully created, properly underwritten and insured ERISA plan fully capable of providing promised medical insurance benefits to the employees of Connelly Management, Inc. in South Carolina.

103.    If Defendant Ferguson Marketing had exercised due diligence, it should have determined that the product it was selling to Connelly was unauthorized and unregulated health insurance and not reinsurance; that AHHA had a history of doing business with failed reinsurers; that AHHA had arranged for all its employer plan sponsors to use the same purported reinsurance carrier

and had all it "eggs in one basket"; that NAI had been formed "after" AHHA began placing its

reinsurance business with NAI; that NAI's only clients were AHHA plan sponsors; that NAI was

formed just 2 months before Connelly's coverage was to be effective; that NAI held no bank

accounts in the US; that NAI was not regulated by any US department of insurance; that NAI had

no audited financial statement and was not rated with any insurance company rating service; that

NAI had no real corporate offices but did business out of a house in Scotland; that NAI had no

adequate reserves to use for the payment of claims; that the product Ferguson Marketing was selling

to Connelly was not reinsurance, but insurance, required to be regulated; that NAI was not authorized

to do business in SC and was not a licenced surplus lines carrier.  Upon information and belief, had

Ferguson Marketing exercised due diligence in looking into the background of AHHA and NAI it

would not have placed Connelly's health plan with AHHA and NAI.

104.    The U.S. Senate, various insurance industry publications, announcements and

warnings from numerous state insurance departments, and warnings issued by the National

Association of Insurance Commissioners of "illegal ERISA Plans" should have placed all

Defendants on notice that the scam they were involved in was illegal and constituted an unfair and

deceptive trade practice. *[Exhibit 18].*

105.    During the time period of January 1, 2001 to December 31, 2002, Plaintiffs employee-

participants incurred adjudicated covered claims in the sum of $927,600.67, none of which have

been paid.

## FOR A FIRST CAUSE OF ACTION

South Carolina Common Law Professional Negligence Cause of Action Against
Defendants Ferguson Marketing Group, Inc., Ferguson Waldron Communications,
Inc., John L. Ferguson, Shan Ferguson, Robert Waldron, Sharon Waldron and Mark

Frye, collectively referred to as Ferguson Marketing

106.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

107.    The Ferguson Marketing Defendants, in their capacity as insurance professionals, committed wrongful acts, errors and omissions, and were professionally negligent, wilful, wanton, careless, reckless, and grossly negligent, and breached their duties to the Plaintiffs, in the following particulars, to wit:

(a)    In failing to exercise due diligence or care in looking into the background of American Heartland Health Administrators Incorporated and its principals Milton D. Wilkinson, Jack H.M. Ferguson and Edwin Ehler;

(b)    In failing to exercise due diligence or care in looking into the background of North American Indemnity, N.V. and its principals Euan McNicoll and John Fowler Anderson;

(c)    In advising Plaintiffs to enter into the Administrative Contract with American Heartland Health Administrators Incorporated;

(d)    In advising Plaintiffs to enter into the Reinsurance Agreement with North American Indemnity, N.V.;

(e)    In failing to advise Plaintiffs North American Indemnity, N.V. was formed in October of 2000;

(f)    In failing to advise Plaintiffs North American Indemnity, N.V. had no auditable assets;

(g)    In failing to advise Plaintiffs North American Indemnity, N.V. was not rated as an insurance company by any insurance company rating organization;

(h)    In failing to advise Plaintiffs North American Indemnity, N.V. did not have a corporate office;

(i)    In failing to advise Plaintiffs North American Indemnity, N.V. was run by two businessmen in Scotland out of their house;

(j)    In failing to advise Plaintiffs North American Indemnity, N.V. maintained no bank accounts in the United States;

(k)    In failing to advise Plaintiffs North American Indemnity, N.V. was not subject to regulation by any state department of insurance;

(l)    In failing to advise Plaintiffs North American Indemnity, N.V. was engaged in the unauthorized sale of health insurance;

(m)    In failing to advise Plaintiffs North American Indemnity, N.V. was selling health insurance and calling it reinsurance in an effort to avoid legal regulation of the sale of its product;

(o)    In failing to timely advise Plaintiffs North American Indemnity, N.V. was not paying its claims;

(p)    In failing to advise Plaintiff that American Heartland Health Administrators had a long history of underwriting for failed reinsurance carriers which left employee-participants with outstanding unpaid legitimate adjudicated claims;

(q)    In aiding AHHA and the Offshore Defendants in the sale of unauthorized insurance by an unlicensed insurance carrier;

(r)    In failing to perform sufficient research or analysis of North American Indemnity, N.V. to determine if it maintained sufficient reserves in order to be considered able to pay benefits in full when due; and,

(s)    In failing to act as a reasonable and prudent insurance professional and in failing to act as a reasonable and prudent insurance benefit design consultant would have acted under the same or similar circumstances then and there prevailing.

ALL of which were a direct and proximate cause of the injuries and damages sustained by the Plaintiffs herein, in violation of the cases, statutes, laws, industry customs, practices and regulations of the United States and the State of South Carolina, in such cases made and provided.

108.    As a direct and proximate cause of the professional negligence of the Ferguson Marketing Defendants, Plaintiffs sustained monetary damages in the sum of $927,600.67, which represents the total of unpaid adjudicated claims under the Plaintiffs ERISA Plan, together with pre-judgment interest, administrative fees, costs and expenses associated with the resolution of those claims, accounting fees associated with the resolution of those claims, any and all professional fees, costs or expenses incurred by Plaintiffs in the resolution of said claims, damage to the credit reputation of the Plaintiffs, a total failure of the benefits for which premiums were paid, and other similar losses, all to the Plaintiffs actual, compensatory and consequential damage.

109.    The Ferguson Marketing Defendants acted in a reckless manner and with a wilful and conscious disregard of the rights of the Plaintiffs herein and Plaintiffs are informed and believe they are entitled to punitive of exemplary damages in an amount to be determined by the trier of fact.

## FOR A SECOND CAUSE OF ACTION

South Carolina Common Law Negligent Misrepresentation Cause of Action Against Defendants Ferguson Marketing Group, Inc., Ferguson Waldron Communications, Inc., John L. Ferguson, Shan Ferguson, Robert Waldron, Sharon Waldron and Mark Frye, collectively referred to as Ferguson Marketing, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants

110.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if

set forth herein verbatim.

111. The Ferguson Marketing Defendants negligently misrepresented to the Plaintiffs that Defendant, Ferguson Marketing, among other things, was an insurance agency, which was an expert in "insurance benefit design" and that it had "over 25 years of experience in consulting, planning, designing, implementing, and servicing all types of employee benefit plans" and that this experience qualified the Ferguson Defendants to evaluate the self-insured ERISA plan with a reinsurance component which was being marketed and sold to Plaintiffs by the Ferguson Defendants.

112. Defendant Ferguson Marketing's motto was that it was "navigating benefits through technology." This motto was intended to represent to the public and to Plaintiffs that Ferguson Marketing had technology which allowed it to access research and analysis of insurance markets and trends for the benefit of its clients. Upon information and belief, Defendant Ferguson Marketing failed to utilize appropriate research and analysis to properly evaluate the product which was being marketed and sold by Defendant Ferguson Marketing to Plaintiffs.

113. At all times relevant hereto, Defendant Ferguson Marketing held itself out to the public as a professional organization with expert knowledge of group health insurance matters.

114. Defendant Ferguson Marketing , the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants negligently misrepresented to Plaintiffs that AHHA was a capable and competent fiduciary who would properly perform its duties on behalf of Plaintiffs.

115. Defendant Ferguson Marketing , the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants negligently misrepresented to Plaintiffs that North American Indemnity Company, N.V. was a financially sound re-insurer, lawfully doing business in the United States and capable of performing its obligations to the Plaintiffs.

G:\CASES\02-290\AHHA.C2

116.    Defendant Ferguson Marketing designed Plaintiffs benefit plan with AHHA as the plan administrator and NAI as the reinsurance company.

117.    Defendant Ferguson Marketing , the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants negligently misrepresented to Plaintiffs that the product Plaintiffs were purchasing complied with applicable laws and insurance regulations.

118.    Defendant Ferguson Marketing , the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants negligently misrepresented to Plaintiffs that in exchange for an agreed premium payment, 100% of Plaintiffs approved adjudicated claims would be paid, and that AHHA would properly adjudicate the claims, and that NAI was capable of funding and would fund the adjudicated claims.

119.    Once AHHA and NAI failed to pay adjudicated claims, the Ferguson Marketing Defendants, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants negligently misrepresented to Plaintiffs that they should enter into a reinsurance agreement with MarkeTrends, who likewise had a product that the Ferguson Marketing Defendants negligently misrepresented complied with applicable laws and insurance regulations.

120.    That the Ferguson Marketing Defendants, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants  had a pecuniary interest in making the aforesaid false representations to the Plaintiffs because the representations were made in the course of business dealings relating to the sale of the product to Plaintiffs and were designed to induce Plaintiffs to purchase and continue paying the premiums for coverage based on those representations.  The numerous misrepresentations, and material omissions, were designed to induce Plaintiffs to have confidence in Defendant Ferguson Marketing, the AHHA Defendants, the Offshore Defendants and

the Mid-South Defendants and the product they were selling and were intended to induce Plaintiffs to obtain and maintain said coverage.

121.    Defendant Ferguson Marketing , the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants owed a duty to the Plaintiffs to communicate truthful information upon which Plaintiffs would base their decision to purchase coverage. Defendant Ferguson Marketing, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants breached the duty to provide truthful information to the Plaintiffs.

122.    Plaintiffs suffered pecuniary and other loss as a proximate result of their reasonable reliance upon Defendants false representations.

123.    Defendant Ferguson Marketing, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants made such negligent misrepresentations in order to induce Plaintiffs to purchase and continue to pay for coverage from Defendants.

124.    Defendant Ferguson Marketing, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants in providing advice regarding health care coverage and information upon which it knew or should have known Plaintiffs would rely, owed a duty of care to see that such information provided by Defendant to Plaintiffs for the purposes of inducing the purchase of coverage was truthful, accurate and complete as communicated.

125.    Defendant Ferguson Marketing, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants breached its duty to see that it communicate truthful information to the Plaintiffs by failing to exercise due care and diligence to verify the accuracy of information provided to Plaintiffs regarding their health insurance coverage.

126.    Plaintiffs justifiably relied on the negligent misrepresentations made by Defendants.

G:\CASES\02-290\AHHA.C2

127.    Plaintiffs suffered pecuniary and other losses as a direct and proximate cause of the negligent misrepresentations of the Defendants. Plaintiffs sustained monetary damages in the sum of $927,600.67, which represents the total of unpaid adjudicated claims under the Plaintiffs ERISA Plan, together with pre-judgment interest, administrative fees, costs and expenses associated with the resolution of those claims, accounting fees associated with the resolution of those claims, any and all professional fees, costs or expenses incurred by Plaintiffs in the resolution of said claims, damage to the credit reputation of the Plaintiffs, a total failure of the benefits for which premiums were paid, and other similar losses, all to the Plaintiffs actual, compensatory and consequential damage.

128.    The Defendants acted in a reckless manner and with a wilful and conscious disregard of the rights of the Plaintiffs herein and Plaintiffs are informed and believe they are entitled to punitive of exemplary damages in an amount to be determined by the trier of fact.

## FOR A THIRD CAUSE OF ACTION

South Carolina statutory cause of action based on S.C. Code Ann. § 38-25-360, which imposes personal liability on insurance agent for sale of product of an unlicensed insurer, against Defendants Ferguson Marketing Group, Inc., Ferguson Waldron Communications, Inc., John L. Ferguson, Shan Ferguson, Robert Waldron, Sharon Waldron and Mark Frye, collectively referred to as Ferguson Marketing, AHHA, the Offshore Defendants and the Mid-South Defendants.

129.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

130.    North American Indemnity, N.V. is not a licensed insurer within the State of South Carolina.

131.    MarkeTrends is not a licensed insurer within the State of South Carolina.

132.    North American Indemnity, N.V. does not have a certificate of authority duly issued by the Director of Insurance for the State of South Carolina.

133.    MarkeTrends does not have a certificate of authority duly issued by the Director of Insurance for the State of South Carolina.

134.    North American Indemnity, N.V. is acting as an insurer that is not authorized to transact business in the State of South Carolina.

135.    MarkeTrends is acting as an insurer that is not authorized to transact business in the State of South Carolina.

136.    That in connection with the sale of the health insurance contract for North American Indemnity, N.V. and MarkeTrends, an unauthorized insurer, the Ferguson Marketing Defendants, AHHA, McSooner, Inc., the Offshore Defendants, and the Mid-South Defendants acting in the capacity of independent insurance agents, brokers, or intermediaries, unlawfully assisted and aided, directly or indirectly, in the procurement of the Plaintiffs' health insurance contract, in violation of S.C. Code Ann. § 38-25-120 (1976, as amended), in the following particulars, to wit:

(a)     Defendant made or proposed to make an insurance contract for the said unauthorized insurer;

(b)     Defendant took or received an application for insurance for the said unauthorized insurer;

(c)     Defendant received or collected a premium, commission or membership fee for the said unauthorized insurer;

(d)     Defendant issued or delivered contracts of insurance to residents of this State for the said unauthorized insurer; and,

(e)     Defendant directly or indirectly acted as an agent for an unauthorized insurer in the solicitation, negotiation, procurement, or effectuation of insurance, in the delivery of policies, or in the adjustment of claims.

137.    That North American Indemnity, N.V. and MarkeTrends, unauthorized insurers, failed to pay Plaintiffs claims within the provisions of the health insurance contract in the sum of $927,600.67, which represents the total of unpaid adjudicated claims under the Plaintiffs ERISA Plan.

138.    S.C. Code Ann. § 38-25-360, entitled "Personal liability on contracts of unauthorized insurers" provides as follows:

> **In the event of failure of an unauthorized insurer to pay any claim or loss within the provisions of the insurance contract, a person who assisted or in any manner aided directly or indirectly in the procurement of the insurance contract is liable to the insured for the full amount of the claim or loss in the manner provided by the insurance contract.**

139.    That pursuant to S.C. Code Ann. § 38-25-360 the Ferguson Marketing Defendants, namely: Ferguson Marketing Group, Inc., Ferguson Waldron Communications, John L. Ferguson, Shan Ferguson, Robert Waldron, Sharon Waldron and Mark Frye; the AHHA Defendants, namely Jack H.M. Ferguson, Edwin Ehler and Southern Plan Administrators, Inc.; and, the Offshore Defendants, namely, Euan David McNicoll, John Fowler Anderson, Marsh Investment Corporation and McSooner, Inc., and the Mid-South Defendants, namely: James A. Glidewell and Brian S. Glidewell, are jointly and severally and personally liable to Plaintiffs in the full amount of their claims.

140.    That the Plaintiffs are informed and believe they are entitled to recover pre-judgment interest and attorney's fees as to this Third Cause of Action.

## FOR A FOURTH CAUSE OF ACTION

South Carolina common law cause of action for failure to procure insurance against Defendants Ferguson Marketing Group, Inc., Ferguson Waldron Communications, Inc., John L. Ferguson, Shan Ferguson, Robert Waldron, Sharon Waldron and Mark

Frye, collectively referred to as Ferguson Marketing

141.    That the Plaintiffs hereby repeat and reallege each and every allegation contained above as fully as if set forth herein verbatim.

142.    That the Ferguson Marketing Defendants undertook to procure, supply and deliver for Plaintiffs a health insurance plan or policy or product that would give Plaintiffs quality health insurance coverage at an affordable price.

143.    That the Ferguson Marketing Defendants delivered a policy that was void or materially deficient.

144.    That the Ferguson Marketing Defendants, in their capacity as an insurance agent or broker, failed to exercise due care, good faith, or reasonable skill, care and diligence in placing the health insurance coverage or product for the Plaintiffs and the Ferguson Marketing Defendants are personally liable to the Plaintiffs for the neglect of that duty for the losses sustained by Plaintiffs in the amount that would have been due under the insurance policy if it had been properly obtained and provided the desired coverage, both in the past and in the future.

145.    That Plaintiffs are entitled to recover as actual monetary damages the amount of their unpaid medical bills, for the damage to their credit reputations resulting from the non-payment or delinquent payment of their medical bills, proximately resulting from the Defendant's breach of duty.

146.    That the Defendant's actions were reckless and amount to a conscious disregard for the rights of the Plaintiffs herein and the Plaintiffs are informed and believe they are entitled to recover punitive or exemplary damages as to this Fourth Cause of Action.

### FOR A FIFTH CAUSE OF ACTION

(Civil Conspiracy Against All Defendants)

147.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

148.    The Ferguson Marketing Defendants combined with AHHA, the Offshore Defendants, MarkeTrends and the Mid-South Defendants for the purpose of injuring the Plaintiffs through the sale of a failed ERISA plan administered by an incompetent claims administrator and reinsured by a sham reinsurance company which was carried out by, aided and abetted by, and jointly assented to by, said parties all in furtherance of the prosecution of the said unlawful enterprise which civil conspiracy resulted in special damage to the Plaintiffs in the sum of $927,600.67, which represents the total of unpaid adjudicated claims under the Plaintiffs ERISA Plan, together with pre-judgment interest, administrative fees, costs and expenses associated with the resolution of those claims, accounting fees associated with the resolution of those claims, any and all professional fees, costs or expenses incurred by Plaintiffs in the resolution of said claims, damage to the credit reputation of the Plaintiffs, a total failure of the benefits for which premiums were paid, and other similar losses, all to the Plaintiffs actual, compensatory and consequential damage.

149.    The Ferguson Marketing Defendants, AHHA, the Offshore Defendants, MarkeTrends and the Mid-South Defendants acted in a reckless manner and with a wilful and conscious disregard of the rights of the Plaintiffs herein and Plaintiffs are informed and believe they are entitled to punitive of exemplary damages in an amount to be determined by the trier of fact.

### FOR A SIXTH CAUSE OF ACTION

Breach of ERISA Benefits Claim Against AHHA, the Offshore Defendants and MarkeTrends

150.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if

G:\CASES\02-290\AHHA.C2

Page 39 of 46

set forth herein verbatim.

151.    ERISA §502 provides that a civil action may be brought by a participant or beneficiary to recover benefits due under the terms of the plan and equitable relief. 29 U.S.C. §1132(a)(1).

152.    As described in the general allegations above, AHHA is a plan administrator responsible for, among other matters, adjudication of welfare benefits claims. Pursuant to the Reinsurance Agreement, and as a result of their actual conduct, AHHA, the Offshore Defendants and MarkeTrends have assumed responsibilities for administration of the plans, appointed a contract administrator, and have purported to refuse to pay welfare benefits claims thereunder adjudicated as valid by AHHA on behalf of the Plaintiffs.

153.    Defendants have wrongfully refused to pay medical benefits due to Plaintiffs under the ERISA welfare benefit plans and are accordingly liable under 502(a)(1)(B) in the amount of claims due and owing to Plaintiffs, together with attorney's fees and pre-judgment interest, and requiring AHHA, the Offshore Defendants and MarkeTrends to make an accounting in regards to the funds received and the adjudicated claims.

## FOR A SEVENTH CAUSE OF ACTION

Breach of ERISA Fiduciary Duty Against AHHA, the Offshore Defendants and MarkeTrends

154.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

155.    ERISA §502(a)(2) authorizes a civil action by a participant or beneficiary for appropriate relief under §409 of the Act for breach of fiduciary duty. ERISA §409 provides, in

pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. [29 U.S.C. §1109]

156.   ERISA fiduciaries are required to act solely in the interest of participants and beneficiaries and for the exclusive purpose of providing health benefits to participants and beneficiaries. 29 U.S.C. §1104(a)

157.   By their actions as alleged above, the Defendants have breached their fiduciary duties to Plaintiffs.   AHHA, the Offshore Defendants and MarkeTrends have deliberately and systematically, refused to pay valid welfare benefit claims because they would like to make a bigger profit.  Said Defendants  have violated ERISA §404(b) by attempting to conceal the fruits of wrongdoing in "offshore" bank accounts beyond the territorial jurisdiction of the United States.  By these and other actions to be proved with particularity at trial, said Defendants have breached their ERISA fiduciary duties to Plaintiffs with resulting losses to the plan and to profit of said Defendants, minimally in the amount of the outstanding welfare benefit claims in the sum of $927,600.67, which represents the total of unpaid adjudicated claims under the Plaintiffs ERISA Plan, together with pre-judgment interest, administrative fees, costs and expenses associated with the resolution of those claims, accounting fees associated with the resolution of those claims, any and all professional fees, costs or expenses incurred by Plaintiffs in the resolution of said claims, damage to the credit reputation of the Plaintiffs, the total failure of the benefits for which premiums were paid, and other similar losses, all to the Plaintiffs actual, compensatory and consequential damage.

158.    Defendants have likewise breached their fiduciary duties to Plaintiffs by the highly improvident selection of AHHA as a claims administrator and NAI as an insurer and co-fiduciary.

159.    Plaintiffs are entitled to damages on behalf of their plans in an amount sufficient to compensate the plans for losses suffered as a result of the defendants' breaches of fiduciary duty and to disgorgement of Defendants' profits.

## FOR AN EIGHTH CAUSE OF ACTION

### (Improper Claims Practices)

160.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

161.    As hereinabove alleged, Defendants are liable to Plaintiffs as insurers for participating in the sale of an illegal insurance product.

162.    Defendants actions in the processing of Plaintiffs claims constituted improper claims practices in violation of S.C. Code Ann. § 38-59-20 (1976, as amended).

163.    Defendants, without just cause, and with such frequency as to indicate a general business practice, engaged in the following improper claims practices, to wit:

(a)    Knowingly misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue or providing deceptive or misleading information with respect to coverages;

(b)    Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;

(c)    Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies;

(d)    Not attempting in good faith to effect prompt, fair, and equitable settlement of claims submitted to it in which liability has become reasonably clear;

(e)    Compelling policyholders to institute suits to recover amounts reasonably due or payable with respect to claims arising under its policies; and,

(f)    Invoking or threatening to invoke policy defenses or to rescind the policy as of its inception, not in good faith and with a reasonable expectation of prevailing with respect to the policy defense or attempted rescission, but for the primary purpose of discouraging or reducing a claim.

164.    Defendants are liable to Plaintiffs, in addition to any sum or any amount otherwise recoverable, for all reasonable attorney's fees pursuant to S.C. Code. Ann. § 38-59-40 (1976, as amended) to be determined by the trial judge and the amount added to the judgment, including attorney's fees on appeal, if any.

## FOR A NINTH CAUSE OF ACTION

### (Unfair and Deceptive Trade Practices)

165.    Plaintiffs hereby repeat and reallege the foregoing allegations of the Complaint as if set forth herein verbatim.

166.    Defendants actions in the sale of the illegal insurance product, as fully alleged hereinabove, constituted unfair and deceptive acts and practices in the conduct of any trade or commerce in violation of S.C. Code Ann. § 39-5-20 (1976, as amended).

167.    Said unfair or deceptive acts and practices must have an impact upon the public interest, including the potential for repetition.

168.    That as a direct proximate cause of said deceptive acts and practices Plaintiffs

sustained monetary damages in the sum of $927,600.67, which represents the total of unpaid adjudicated claims under the Plaintiffs ERISA Plan, together with pre-judgment interest, administrative fees, costs and expenses associated with the resolution of those claims, accounting fees associated with the resolution of those claims, any and all professional fees, costs or expenses incurred by Plaintiffs in the resolution of said claims, damage to the credit reputation of the Plaintiffs, a total failure of the benefits for which premiums were paid, and other similar losses, all to the Plaintiffs actual, compensatory and consequential damage.

169.    The Defendants  use or employment of the unfair or deceptive methods, acts or practices were a willful or knowing violation of S.C. Code Ann. § 39-5-20 (1976, as amended) and Plaintiffs are informed and believe that the court should award Plaintiffs three times the actual damages sustained and reasonable attorney's fees and costs.

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1.    For a monetary judgment in an amount of actual, incidental, consequential and punitive damages to be determined by the trier of fact against the Ferguson Defendants as to the First Cause of Action;

2.    For a  monetary judgment in an amount of actual, incidental, consequential and punitive damages to be determined by the trier of fact against the Ferguson Defendants, the AHHA Defendants, the Offshore Defendants and the Mid-South Defendants as to the Second Cause of Action;

3.    For a monetary judgment in an amount of actual, incidental, consequential and punitive damages to be determined by the trier of fact against the Ferguson Marketing Defendants, the AHHA Defendants,  the Offshore Defendants, and the Mid-South Defendants as to the Third

G:\CASES\02-290\AHHA.C2

Cause of Action;

4.     For a monetary judgment in an amount of actual, incidental, consequential and

punitive damages to be determined by the trier of fact against the Ferguson Marketing Defendants

as to the Fourth Cause of Action;

5.     For a monetary judgment in an amount of actual and punitive damages to be

determined by the trier of fact against all Defendants as to the Fifth Cause of Action;

6.     For a monetary judgment in an amount of actual and punitive damages to be

determined by the trier of fact against AHHA, the Offshore Defendants and MarkeTrends and an

accounting as to the Sixth Cause of Action;

7.     For a monetary judgment in an amount of actual and punitive damages to be

determined by the trier of fact against AHHA, the Offshore Defendants and MarkeTrends as to the

Seventh Cause of Action;

8.     For all reasonable attorney's fees to be determined by the trial judge and the amount

added to the judgment, including attorney's fees on appeal, if any, against all Defendants as to the

Eighth Cause of Action;

9.     For treble actual damages to be determined by the trier of fact and reasonable

attorney's fees and costs against all Defendants as to the Ninth Cause of Action;

10.    For an Order requiring Worldwide Trustees Services Limited to provide discovery

to Plaintiffs, including but not limited to, providing information relating to all transactions involving

McSooner, Inc. and Marsh Investment Corp.

11.    For an order setting aside any transfer of the assets of Marsh Investment Corp. which

took place after it was on notice of the pending claims and litigation as fraudulent transfers;

G:\CASES\02-290\AHHA.C2

12.   For a trial by jury as to the First, Second, Third, Fourth, Fifth, and Ninth state law causes of action;

13.   For an award of pre-judgment interest and post-judgment interest;

14.   For an award of all applicable fines against AHHA, the Offshore Defendants and MarkeTrends;

15.   For an award of attorney's fees;

16.   For the costs and disbursements of this action; and,

17.   For such other and further relief as this Court may deem just and proper.


THE MASON LAW FIRM, P.A.

BY: _____

**MARK A. MASON**
Fed. Ct. Id. #3325
One Courtyard Square
880 Highway 17 Bypass
Mount Pleasant, S.C. 29464
Telephone: (843) 884-1444

Attorneys for the Plaintiffs

Mount Pleasant, South Carolina
March 7, 2003

2:02-2440-18

United States District Court
District of South Carolina

# DOCUMENT

# NOT

# SCANNED

_____ Exceeds page limit of 200 pages

_____ Fourth Circuit Opinion (to view document go to
4th circuit website at www.ca4.uscourts.gov)

_____ Transcript/Deposition

_____ Physical condition of pleading prevents scanning

✓ Other: exhibits

# **REFER TO COURT FILE**

Copies of this document can be obtained for a fee by calling the  appropriate office
corresponding to the case number.

#15